Good morning. May it please the court. My name is Isaac Macbeth. I represent the appellate in this case, and I'm here to plead the cause of a man who was unable to do it for himself in the hopes that similar tragedies might be avoided in the future. This is a case in which the district court granted a Rule 12b6 motion dismissing a case in which a man who was clearly suffering from prescription medication overdose received no medical attention from the officers who arrested him. The claim that was asserted was a 14th Amendment deliberate indifference claim, and the district court dismissed the claim on two separate bases. It found as to the merits that the complaint had failed to plausibly allege a 14th Amendment due process violation, and it also found that the officers were entitled to qualified immunity. Now, before I address those points, I want to flag something at the outset for the court. There was an argument that was raised on brief that in my preparations, I believe is not well taken, and I will not be advancing today. That argument is on page 9 to 10 of the appellant's reply brief, where it was argued that supervisory individuals in their individual capacities can be subjected to claims on a Monel standard of liability. We will not be arguing that position today. We don't believe it to be well taken. Nevertheless, there is a compelling case for reversal in this case. The district court, as I said, granted dismissal on the merits and on the basis of qualified immunity, and it's important to keep those two grounds of dismissal separate because as to the former, the law of decision would be the current law, meaning that if Kingsley, the Supreme Court's decision in Kingsley altered the 14th Amendment standard of liability, that standard would govern the merits analysis. Qualified immunity, by contrast, is analyzed under the law as it existed at the time of the alleged infractions, and so it's important to analytically keep those two things separate. Turning first to the merits dismissal, appellant contends that the court erred in not finding that Kingsley modified the standard for a due process violation under the 14th Amendment. The reason that we believe the district court erred is that although Kingsley was a 14th Amendment excessive force case, the reasoning in Kingsley really dispels any reason for continuing to include a subjective element in a 14th Amendment deliberate indifference claim. Kingsley court reasoned that the subjective element finds its origins in Farmer v. Brennan, an 8th Amendment case, and the reason that that element was incorporated into the deliberate indifference analysis in Farmer v. Brennan is subjective awareness and intent is a necessary condition to infliction of punishment, which is obviously what the 8th Amendment is concerned with, the cruel and unusual infliction of cruel and unusual punishment. Kingsley's reasoning, however, made clear that while punishment would run afoul of the due process clause, as pretrial detainees cannot be punished under any circumstances, punishment is not a necessary predicate to recovering under the due process clause. And so the end result is that if there's no, if the only reason for the subjective component of deliberate indifference is to prove that punishment occurred, and punishment is not a requisite showing of recovery under the due process clause, the basis for a subjective requirement in 14th Amendment deliberate indifference claims evaporates. And we think that that conclusion is further underscored by the language of Farmer itself. In that case, the court said the 8th Amendment outlaws cruel and unusual punishments, not unusual. Counsel, can I can I ask the question? So how does that how does that square with Bell, where the Supreme Court does seem to say that the due process clause turns on whether there's punishment? Now, not whether it's willful and wanton. I get that. But you said that punishment is not a predicate on the due process clause. I took Bell to say the opposite. Why am I misreading Bell? Well, Your Honor, I think that Kingsley made a direct observation on that and said that while Bell used language that focused on punishment, the analysis in the case said, even where punishment could not be shown, the pretrial detainee could prevail by showing that the excessive government action was not rationally related to the interest at stake. And so Kingsley said, therefore, punishment would not be necessary, notwithstanding the language of Bell focusing on that. And so I think the answer to the question is, is while Bell does use language that contemplates punishment, it's reasoning also qualified that to say, even in the absence of punishment, an objective violation could be shown by testing the government action against the rational interests involved. And then also in Farmer, I think that these two quotes really particularly underscore just how closely tied I'm sorry, I'm sorry, because I didn't I didn't want to interrupt, but I couldn't find it. But that's not exactly what Kingsley says, right? Kingsley says that that where you can't show an intent to punish, that you can infer that where the actions are not rationally related. But that's about the intent to punish, not whether there is an it correctly says that Bell is not about an intent to punish, but it still requires punishment. And that's because the actions are not rationally related allows that inference. Is that am I just reading that wrong? I'm sorry. Um, that's not how I read it, Your Honor, what I understood was that intent and punishment are necessary concepts to each other. That is to say, there can be no punishment without intent. That's that's the relationship between those two ideas. And so as the way that I read Kingsley was saying, in which you could never have a situation where punishment occurred without the requisite intent. That was that was the point Scalia made in Farmer was, you can have all sorts of reckless conduct, but without an actual intent to afflict punishment, it's not punishment. And so I don't think that analytically, you could separate a situation where one does not have an intent to punish and still find punishment. I think that those two realities can't mutually coexist. So how does that move the ball in this case? What's the sort of the end result of that conclusion? Yes, Your Honor. So how that would particularly impact this case is that it would require the revision of the current deliberate indifference standard employed by the Fourth Circuit. Currently, we use the Eighth Amendment Farmer v. Brennan standard to adjudicate medical deliberate indifference claims under the 14th Amendment. Kingsley's reasoning, however, would counsel that although the objective medical need component would remain the same, simply because that's the constitutional right to care is for medical needs, not elective care. The subjective component would be revised to reflect that the government actor had acted, had engaged in purposeful, knowing or possibly reckless conduct that was objectively unreasonable. Getting back to Judge Richardson's question, how does the sort of the objective failure to meet someone's medical needs equate to punishment? It doesn't. I don't think that an objective without an intent to inflict punishment, the conduct can't be punishment. That's what or without the conduct can't be punishment. So if there's no intent to disregard the known risk, then the conduct is in punishment, no matter how egregious it is. But it remains a violation under the Constitution, not pursuant to the Eighth Amendment, but pursuant to the 14th Amendment? That's right, Your Honor. That is what we understand that Kingsley would endorse, is that even where conduct has not... Doesn't it? Well, I think that it, I don't, I think that it has been traditionally understood that excessive force that would meet the definition of punishment would violate the due process clause. But I think that the entire, as we read Kingsley, the point was punishment is no longer a requisite showing to due process recovery. So I think that that's what's changed in the light of Kingsley, is whereas prior it was, the metric was conduct that would amount to punishment. In the post-Kingsley era, the due process clause would not require punishment to be at place. So long as you require punishment to be at play, the subjective intent would still be required as well. You can't cleanse the standard of subjective intent and still require punishment to be shown because you've basically eliminated the foundational requirement for showing punishment at that point. So I think to answer your question, Your Honor, we would say no, that Kingsley took excessive force away from the direction of punishment and instead said that conduct that would be objectionably unreasonable would be an affront to the 14th Amendment, due process clause. I don't mean to cut that off, but can you then turn to the next question that you began with sort of saying, assuming we agreed with you, or frankly, if we disagreed with you on this first step, can you talk about what that means for the second step? If Kingsley did require revision of the standard, or if we disagreed and it doesn't require revision of the standard, what effect that has on the second step and how that's analytically distinct here? Yes, Your Honor. So the second step of the analysis or the second basis of the court's dismissal was qualified immunity. And so how you adjudicate or rule on Kingsley, either way, does not affect the qualified immunity analysis because the law is clear that qualified immunity looks to the law at the time of the offense. So even if the court were to conclude, well, the 14th Amendment does apply a different standard. We would judge the officer's qualified immunity by how the 14th Amendment had been interpreted at the time, which was to be lockstep with the 8th Amendment deliberate and different standard. So the question doesn't impact the analysis either way under qualified immunity. It would only impact the plaintiff proving its case at trial or the standard that the case would be judged at its summary judgment. Perfect. So that's exactly the question I want to get to it. Assume I agreed with you hypothetically that it's that it Kingsley applies objective standard at step one. Step two, effectively, let's just call it a subjective standard. The farmer standard applies and we show up at trial. The judge has to instruct the jury on the subjective standard. Right. In order for you to actually get money. No, what would happen if you change the standard under Kingsley? The judge would have to instruct the jury on the new objective standard for the plaintiff's claim. However, the defendant asserting qualified immunity would receive instruction. Assuming there was some disputed fact that the court needed resolve for qualified immunity. Right. The jury would receive instruction on that subjective standard because that would be the standard that qualified immunity would be judged under. Or the court may just propound a special interrogatory to resolve whatever factual issue it needs. So it'd be like an affirmative defense. So in other words, to establish your claim, you got to establish objective. And then the defendant will come in and say there's an affirmative defense where they didn't subjectively know this. And that would be sort of a special verdict form of some sort, assuming material facts were at issue. OK, that that's helpful. Thank you. Yes, your honor. I wrestled with the same concept. Sorry, I didn't mean to cut you off. Go ahead and finish your answer to participants. I was just musing, your honor. I'm done. So, you know, this discussion between you and Judge Richardson sort of highlights the concern I have about this case regarding qualified immunity. You seem to be suggesting that that somehow gets to a jury. But isn't the very notion that we've had to go through these iterations, interpret Kingsley to get to a newfound rule of law that now changes of subjective intent to an objective intent? Suggest that these officers can't possibly be liable because they could not have predicted this change in the law. Yes, your honor. I understand that question. And it was and it's a question that I've put a great deal of thought into. And I believe the answer to your question is no, it does not automatically follow that because you've changed the object, the standard from subjective to objective that they would not automatically get qualified immunity. And what's interesting about that, your honor, is that exact issue was argued in Kingsley back on remand to the Seventh Circuit and the Seventh Circuit rejected that argument. And the reason for that is, your honor, the defendant can still prove its affirmative defense under the law that it's as it existed at the time. And so the defendant isn't losing the benefit of qualified immunity or being tested or exposed to liability or having the immunity, the standard for immunity changed on them by you changing the standards of the merits of the claim. The defendant still gets to pursue qualified immunity under the deliberate and different standard that existed at the time. It may be that the judge only needs the jury to resolve a few isolated facts and then make the immunity analysis for itself as a matter of law. But it wouldn't change the fact it wouldn't require that the merits claim be dismissed simply because the court has changed the standard for the merits claim. The qualified immunity standard remains unchanged. In other words, oh, sorry, your honor. No, no, go ahead. In other words, if the defendant was able to show that notwithstanding the change to the 14th Amendment standard, the officers were not subjectively aware of the risk and subjectively disregarded the risk. They would still be entitled to qualified immunity, even if the court changed the standard for the merits under Kingsley. Counsel, what if Kingsley was just off the board? Do you think you can't meet the deliberate and different standard here under these facts? No, I believe very much we can, your honor. But wouldn't it be better for you for us not to reach Kingsley and get it off the table and not address that issue at all? And just assess your case on whether or not it was correct or incorrect to grant summary judgment or qualified immunity based on deliberate and different. And even at trial, that it would be that standard even for damages or liability to before the jury. Wouldn't that be because, as Judge Diaz alluded to or commented directly, that it implicates maybe this is so up in the air and loose in terms of standards that it's not clearly established. But what's clearly established whether or not there's a constitutional violation in terms of whether or not you can allow somebody who seems to be clearly in need of medical attention and put them in a cell. That's that question there. Then actually, what did the officers know? So if you think you can do that deliberate indifference, then why do you bring in Kingsley to potentially hurt your case? Well, I suppose the short answer to the question, your honor, is it would hurt the case if the conclusion was that revising the standard under Kingsley would require the grant of qualified immunity. Because of the ramifications for clearly established law. And in that way, then I would agree. Yes, your honor, it would be best to test the case under farmers deliberate indifference standard. That's that's the answer that I have to your question. I don't know if that fully answers it. You answer that. And I just want to make sure I understand because I think I understand, but I'm not certain. So if if we agreed that enough evidence to meet farmer. Right. In contrast to what the district court said, at least at a motion to dismiss stage or summary judgment, probably too. But if you met that farmer standard, are you asking us to or would you how do you phrase what you're asking us to do? Would you you would prefer to try the case under farmer than be dismissed under qualified immunity? That's basically what your response to the chief is. Exactly. Your honor. I think that in some do that, we can sort of duck question one, because either way at trial, either as a affirmative liability finding or the affirmative defense finding, you got to show farmer either way. That's right, your honor. And so I think that that can implicate the doctrine of mootness in the sense that we need not decide the Kingsley question because the subjective standard will be at play in the merits regardless. Although the burdens are different. Right. Because in the hypothetical, we've decided or we've not decided, but we're positing here. You would then bear the burden under farmer where under our earlier hypothetical that we talked about, the defendant would bear the burden under farmers or from the defense after you bore the burden under the like revised Kingsley standard, whatever, whatever that is. Well, that's actually so that's a unique aspect of qualified immunity, your honor. And this court in Henry v. Pernell said the way that the defense works is the plaintiff bears the burden of proof in establishing the first element of saucier. And then the defendant bears the burden of proof on clearly established. So we would actually, even though they're asserting the affirmative defense, we would have the unusual twist of we would still have to prove the violation under the standard applicable to qualified immunity. That is the farmer standard. Wait, say that one more time. I'm sorry, chief, for taking time. Say that just one more time. I just want to make sure I followed it. Yes, your honor. So the way that the fourth circuits interpreted the burden of proof with the two prong saucier test for qualified immunity is the plaintiff has the burden of proof on the first prong. That is whether a violation occurred and the defendant has the burden of proof on the clearly established requirement. The second prong of the saucier analysis. And your point is, is that the. But the. I'm not sure I follow. So what does that mean for like the jury instruction with that? Does that affect the point we just made about the burdens being different? Yes, it does, your honor, because basically we would need to prove a violation for purposes of qualified immunity, which would be the farmer standard. And then we would, if the court changed the law, prove our case in chief, which would be under the revised standard that the court formulated, if it formulated one. So in essence, the jury would be instructed that we would have a burden to prove subjective, the subjective intent, but it would be in connection with their affirmative defense, not with our case, our merits, our case in chief. It's a odd nuance to qualified immunity. And so and so the essence there would be that the district court might well say we're only going to instruct on subjective intent because we know from Bell, for example, that subjective intent necessarily satisfies objective intent. And so rather than require the jury to find both, we simply instruct on the higher burden and that that resolves your case on the question of whether you meet farmer. If you do, you win. If you don't, you lose. But that's going to be true no matter what we do. That's exactly right, Your Honor. Thank you, Chief. I see I've run over my time. I had intended to reserve a few minutes for rebuttal, but I think that ship has sailed. So if there's any other questions, I'll field them. Otherwise, I'll cease my argument. All right. Thank you. Yes, Your Honor. The data. Yes, Your Honor. May please. Maybe please, of course, Chris Dadek on behalf of the police. I want to address and start at the merits as the appellant did. There's a slight twist to this case is that the district court, you know, even under the farmer standard, there's an objective prong and a subjective prong. And district court's opinion talked about the objective prong is the serious medical need, and that's diagnosed by a physician needing treatment or easily recognizable by a layperson. And it goes on to the subjective standard that much discussion focused on. But the district court in its ruling found that based on the allegations, the appellant had failed to show that the medical need was sufficiently obvious, the objective prong, or that the defendants actually knew of and disregarded the excessive risk, the subjective prong. So the district court found that the appellant had failed to allege enough to satisfy the objective prong and the subjective prong. So our position has been that changing the standard would not change the correct result of a district court because he had still failed to allege and satisfy the objective prong. And briefly, I'll talk about Kingsley is that just so that you don't need to belabor this because I think you've probably picked up where this is going. But why is it that you think that's right? I mean, I read the district court's decision, but why is it do you think that it's right on the 12B6 standard that neither of those are met based on the facts we've got here? And I understand that the facts might turn out to be a little different, but just in sort of brief form, why do you think? Grayson's the one where the guy's fighting back? It was eventually. Yes, Your Honor. All right. So but OK, I mean, as opposed to the guy virtually comatose. Yes, Your Honor. But in terms of putting the defendants on notice and this goes a little more qualified immunity, but in terms of the objective prong, you know, he's being arrested for public intoxication. I mean, his bloodshot eyes. He's at least somewhat conscious based on the allegations. He can't ambulate, but with help, you know, what we're looking for in terms of the objective need is that a lay person would have easily seen recognize that he has a serious medical need. Besides the fact that he's intoxicated, we're not talking about and I understand and I don't belabor this point. I understand that at trial like that, you may well like prevail on that idea. Right. I haven't seen the guy. Maybe their videos. Maybe your guys say, you know, we see 400 of these guys a year. They all look the same and none of them have ever died before. So we had no reason to think. I don't know. I mean, you're you're sort of that. That sounds like a jury argument you're making or a summary judgment argument, not a motion to dismiss argument. He says, you know, in essence, I was comatose and they should have recognized that I needed to go to the hospital. That doesn't that doesn't seem like a crazy idea to me. Yes, your honor. Two points briefly. One, I don't believe the allegation that he was comatose. He fell asleep at times and a difficulty being woken up. But the allegation in a complaint talks about him lifting his head to communicate. So we're not talking about someone who's completely unresponsive or comatose. Second, we have the allegations that he was arrested the night before for a very similar issue and had similar symptoms and was and did not have any medical need or require any medical attention. So which is which is going to be a very good argument for you at summary judgment or in front of in front of a jury. Right. But that that's not part of the complaint, is it? I mean, he didn't allege that he was arrested the night before and had similar problems, does he? Yes, he does, your honor. I mean, the factual allegations are he doesn't exactly phrase it that way. But just based on the facts alleged, he does allege that he was arrested the night before, that he had slurred speech, bloodshot eyes, difficulty communicating. Now, he was eventually released on his own recognizance. There's no allegations of the timing of the release. But, yes, your honor, he does allege symptoms which we contend are quite similar to what he exhibited the following night. And that's what makes this case. It's the similarity that this is I'm not sure this is worth spending our time on. It's the similarity that he doesn't allege. Well, he doesn't put it in those terms, your honor. Of course, he alleged facts from the night before, your honor. And I will turn to him in a complaint. I can I can read it. You don't need to belabor it. I can. I got it. But he had slurred speech, bloodshot eyes, struggled to stay awake, very lethargic, difficulty standing up. So difficult to ambulating. So it is our position that those factual allegations are similar to factual allegations related to the second night when he was arrested and tragically died, your honor. So what when they call for a medical emergency? Well, your honor, again, I think Grayson V.P. I'm not talking about Grayson. I'm talking about this case. Wasn't the call for medical emergency? Well, your honor, the call. Yes, your honor. But that's not within the law enforcement officers responding to the call. That's not their decision to make. Your honor, they're dispatched. No, no, but I'm saying that gives you the initial context of what they're responding to. For example, difference when you're saying I'm responding to burglary in progress as opposed to man is down in the street, needs medical attention. That's frames of context, doesn't it? I'm not saying it's conclusive or dispositive, but it frames a context for the call. It was it was a medical emergency call. And you said you asked the answer. Yes, it was. And when they got there, they saw him there lying in a bed of of a truck that had water in it. He's lying in the water in the bed of truck. Right. No, your honor. They found him in in the actual pickup truck. Your honor. He got me. Yes, your honor. Your honor, your chief judge is correct. He eventually was moved to the back of the truck and he laid down the back of the truck and there was water in the back of the pickup truck. Right. And they put him in the water. Right. No, no, your honor. They didn't put him in the water. They moved him to the back of a truck. He sat down and then he took him out of a car and put him in the bed of a truck that had water in it. Well, your honor, they didn't physically. I don't want to speculate too much as to the. No, we don't want to speculate, but we hear it. Not speculating. You want us to be conclusive as a matter of law? And yet here in these faxes or you don't even want to speculate. I'm just telling you the facts. They took him out of the passenger part where he was or the driver's part. And they put him in the bed where there was water. It was standing water. And he laid down in the water, didn't he? He did. He did lay down. Yes, your honor. And then there was medication bottles of prescription medication near him when you found him. Correct. That is correct, your honor. He couldn't even put his own feet down. They had to literally physically take his legs and put it down on the ground so he could manage to get up with their help to even move him. Is that right? Well, your honor, they allege that he need to help getting out of the car and placing his feet on the ground. Yes, your honor. But there's no allegation that he was unable to ambulate with assistance, your honor. He also had difficulty standing up the night before, your honor. So, your honor, the difficulty is that all these signs point to someone who's intoxicated. But they do not point to someone who is in need, in serious medical need, your honor. Obviously recognizable to a lay person. The appellant spends a lot of time focusing on the medication and the amount of it found at the scene. But again, there's... Just to help me understand, how are we supposed to make that decision at a 12B6, right? I mean, I get some extreme example, right? The guy has appendicitis. And so you can't recognize anything, right? Like, you know, there's nothing to see. But, you know, obviously, I assume you would agree at some point, you know, people that are intoxicated need medical assistance, right? I mean, that's why we talk about people getting their stomachs pumped, right? And so the question is, where on that spectrum did he fall? Was he so far gone that he needed to have his stomach pumped or medical attention? Or was he just really intoxicated, you know, like we might find on a college campus? I don't know. But I don't know, absent some factual development, how I'm supposed to make that decision based on the complaint. Well, Your Honor, I would point to allegations of unconsciousness, completely unresponsive, difficulty breathing, vomiting or obstruction of the pathway. Those are exactly the type of indications noted in Grayson V.P., Your Honor. And those are the type of allegations you would – or I would concede if those allegations were made that we would likely not be here, Your Honor. And where do I get those from? I mean, that's like – they're like legal conclusions that that's the symptoms. I mean I get that you might get a doctor or a jailer who says – you know, supports that. But here, how do I know that that's – I mean that seems reasonable to me, right? But I don't – you know, you're not a doctor. How do I know that like that's the type of thing that somebody would recognize that's when they need medical attention? Well, Your Honor, the legal standard is has to be easily recognizable by a layperson. That is the legal standard. And as this court found, the allegations failed to meet that burden that there – it has to be easily recognizable by a layperson, Your Honor. And so the analysis is you look at the factual allegations and the determination is in terms of at least the objective prong. And I'm talking, of course, under the old standard or at least current standard. You look at the allegations. Are they diagnosed by a physician that's maintaining treatment or recognizable by a layperson? And what I think this case is unique in, in terms of the symptoms he had, Your Honor, were not easily recognizable by a layperson. Again, we're talking about law enforcement and correctional officers responding to the scene. And one thing I would like to point out, that the appellant – we've given the appellant the benefit of the totality of the circumstances. But we're talking about six individual officers who are being sued for any interaction they had with the decedent that evening. So there is no single defendant who was present in the very beginning to the very end and witnessed each one of these factual allegations. And despite the – having the benefit of that totality of circumstances, the district court still found that it wasn't sufficiently obvious. And the reason for that is, again, I point to Grace of the Peaks. I think it's also important for qualified immunity is the court there found similar issues and focused on those symptoms. And so in terms of qualified immunity, the analysis is whether a reasonable official would have known that they were violating – that his conduct was unlawful in the situation he confronted. And so when you have Grace and VP, which is, by the way, a finding of no constitutional violation, those officers were not unnoticed that their conduct was unlawful in the situation they confronted. This isn't a case of qualified immunity where we are trying to distinguish from similar case law finding constitutional violations and are relying on minor details or differentiations to say this isn't the same fact pattern. We have a similar fact pattern in Grace and VP in terms of what was witnessed and what this court found was insufficient to find a constitutional violation. And so our position would be even if the court got the problems wrong, these defendants are entitled to qualified immunity because in the situation they confronted, they would not have been put on notice that their acts were unlawful. And I'll point to a couple other factors that support that position because regardless of whether their standard remains the same as subjective or purely objective is the state of mind has to be purposeful knowing or at least reckless. And in this case, the amended complaint talks about how one of the defendants called the commonwealth's attorney and notified them of the intoxication level of the defendant. But the defendant was also taken from a magistrate who witnessed his level of intoxication and ordered him held until he sobered up. So there are numerous reasons for why these defendants were not put on notice that the conduct that they committed was unlawful. And again, for example, how each of these defendants only interacted with the decedent over a certain period of time. Not one of them was present from the very beginning to the very end. And so for qualified immunity purposes, they have to be put on notice that their conduct is unlawful. And so our position has been pretty consistent, Your Honors, that regardless of whether the standard remains objective or subjective, the appellants are – district court correctly found in favor of the appellants because he didn't meet the objective problem. The difficulty is, for example, the appellant relies on the prescriptions and the amount of pills missing. But defendants don't know whether he actually ingested those pills, sold those pills, lost those pills. That's not a reasonable inference in favor of the appellant. On top of that, there are issues with the obviousness of the risk. And so I would also like to point out that as alleged in the complaint, the cause of death was acute overdose of four substances. The complaint only alleges that defendants knew of two substances, which also ties to Grayson v. Pede, where there was an unknown heart condition. So in this case, we have a cause of death from four substances, two of which the defendants did not know about. So I think that's another factor that puts this case closer to Grayson v. Pede, both in terms of the merits and in terms of the qualified immunity analysis. But you knew he had consumed prescription medication, right? Yes, Your Honor. Right. And you knew they were narcotics, prescription narcotics. Well, I believe in the second arrest, while they were prescription medications, I do not know if I do not believe they are narcotic. Gabapentin and Cetilipram, Your Honor, I don't know. Gabapentin is an anti-epilepsy medicine and aloprosilam that we know is Xanax, is my understanding. Yes, Your Honor. But that's what he said. Narcotics. But aloprosilam is what he said he took the night before. So the night of his arrest and the pills they found, as alleged in paragraph 23 on page 36 of the Joint Appendix, is Gabapentin and Cetilipram, not Xanax. But there are some practical issues in finding these allegations are sufficient. For example, what if they just knew he took prescription medication but have no indication of what medication it was or how much? Is the inference then that they must assume a certain amount, that it's a lethal amount? I think the more rational position is, as courts typically have in the past, is you focus on the symptoms. And again, as in Grayson v. Pede, the symptoms here do not involve loss of consciousness, difficulty breathing, obstruction of pathways, obvious signs that someone is in need of medical attention. But otherwise, every person who is arrested for public intoxication that has the symptoms alleged by the appellant will require a duty to have them sent for medical care. And in practical terms, our position would be that is an unworkable standard and a change in the law to which would entitle the defendants to qualified immunity. Well, I say the argument is the fallacy of false dilemma. In other words, if we do this, then it has to be all there. You take so many things out. This was a medical call. Most DUIs are there to watch people, the way they observe their driving. They are driving, they're operating, and that's how 90% of them or more start. This is a case where you were called for a medical emergence. And when you came, you found out there was medication there. He was in and out of consciousness. That's not, you know, you can't make the chicken little argument here that is the sky falls in at this case and everybody who's charged with DUI who stumbles. No, no, no, that's not the case. We hope that everybody that you respond to medical need call that presents like this is a question is a factor question. The jury may have to decide, but maybe not or whoever, or maybe qualified immunity when it's appropriate, whatever. But 12 be six as a matter of law. That's the, that's the issue. That's the question. I mean, a lot of lot of circumstances. It's a matter of fact, police officers are not physicians. That's why they don't have to make determination in their treatment. In terms of looking at what what you're presenting. When you come in and protect them to serve. And even when you're intoxicated, you have a right to be protected. Matter of fact, you still presume to be innocent. And you present needs for medical medical need. Question is whether or not enough for the person should have known a reasonable officer should have known. I know I'm out of time if I may briefly respond. Sure. Hey, you want to just briefly what I would say is, again, while yes, the call was for medical attention, but it is worth noting that the magistrate saw the appellant and ordered him held until he sobered up. One of the defendants called the commons attorney and described the situation to a commons attorney. And in terms of where there's a 12 B, six or seven judgment. These are the facts alleged by the Bible plaintiff. And so I believe the district court correctly gave them in the light most favorable to a plaintiff. And they still were insufficient to meet the objective or subjective prong. And if and I know my time is up. So unless there's any other questions, I will finish my argument. Thank you. Thank you. Mr. Macbeth, you have some time reserved. Thank you, Your Honor. I'll be very brief in my remarks. The first thing I wanted to address was Mr. Dad X commentary on the on the magistrate. Basically, as I understand the argument, the argument is because the magistrate acted in the way he did that is order him detained until he was sober. That somehow generates an inference that a lay person wouldn't have observed a serious medical need. And I think that that inference is just not completely or not at all warranted. Virginia magistrates, just like federal magistrates, are creatures of statutory authority. They can only do certain things. There is nothing in the statutory enumerations of power given to a Virginia magistrate that would say, give them the power to direct the officers to take the person to the hospital to take Mr. Mays to the hospital. So pointing to the fact that perhaps the magistrate didn't do that and saying, well, that generates an inference about his condition at the time is a red herring. It's a it's a fiction because the reality. Well, don't you really just want to say, like, listen, we can have that argument at summary judgment or in front of a jury, whether, like, we think that about a magistrate or not. I don't know. It doesn't seem like a crazy argument to me, but it's not a it's not a motion to dismiss argument, I think, is sort of the first line. We can discuss whether, you know, the magistrate's finding is a useful data point for you to argue at some later point or your your colleague to argue. But the point is, is that like that's not the the required inference rendering all other inferences implausible for purposes of a motion to dismiss. Exactly right. Your honor. That's right. I think that, you know, the factual distinctions between this case and Grayson have been highlighted and its procedural distinction is Grayson was decided on a full record. That was a case decided on summary judgment, not on a motion to dismiss, which further distinguishes that case. And I think that there's particularly a need for a full record in this case, because what the obvious risks are of prescription overdose, what a layperson might consider obvious or serious, very well have changed since 1999 when Grayson V.P. was written. That was on the left side of an epidemic, opioid epidemic and prescription medication crisis. 2016, where this happened is on the other side of that. Very similar to a layperson in 2020 may view coughing and a fever much more seriously than they did in 2018 because. But you wouldn't argue that for for qualified immunity purposes, if Grayson was on all fours here, the changing times would be a hard argument to putting these officers on notice for qualified immunity purposes. In that, I mean, in that an over over don't have to go there, but why why make the argument that it's changing times? The point is, from your perspective, is that Grayson is not on all fours. But if it was on all fours, then you got a really hard qualified immunity argument. Yes, Your Honor, that's right. I think I was just trying to make the point that I think this is a decision that needs to be buttressed by an actual record, not just allegations on a complaint. And I don't want to belabor the point. And so that's that's all I have, Your Honor, unless there's any questions that I could feel. Thank you so much, Counselor. Thank you both. We express our gratitude for your being here. We can't come down and shake your hands, but you are very helpful in the process of trying to understand these issues. And we really appreciate your argument and your being here. And we wish you well, be safe and stay well. Thank you, Counselor. Thank you, Your Honor. I have a brief recess for the court.
judges: Roger L. Gregory, Albert Diaz, Julius N. Richardson